**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

ADONAY RAMIREZ
1610 Park Road NW, Apt. 201
Washington, DC 20010

ALCIDES RAMIREZ
3720 16th Street NW, Apt. 702
Washington, DC 20010

ANAEL RAMIREZ
1610 Park Road NW, Apt. 201
Washington, DC 20010

OLVIN ALEXANDER NATAREN
a/k/a ALVIN NATAREN
3055 16th Street NW, Apt. 607
Washington, DC 20010

       Plaintiffs,

v.

EYE STREET DINING, INC.
d/b/a Alba Osteria
425 I Street NW
Washington, DC 20001

FOXHALL ENTERPRISES, INC.
d/b/a Pizza Autentica
1331 L Street NW
Washington, DC 20005

FIRST ANNEX, INC.
d/b/a Café Cantina
4735 Dexter Street NW
Washington, DC 20007

GOLDEN EAGLE, INC.
d/b/a Al Dente
4561 Indian Rock Terrace NW
Washington, DC 20007

**Case No.: 1:15-cv-1073 (ABJ)**

**PLAINTIFFS' SECOND
AMENDED COMPLAINT**

HAKAN ILHAN
4561 Indian Rock Terrace NW
Washington, DC 20007

DIVISION ENTERPRISES, INC.
d/b/a Gelateria Dolce Vita
4561 Indian Rock Terrace NW
Washington, DC 20007

                Defendants.

---

## PLAINTIFFS' SECOND AMENDED COMPLAINT

### Introduction

1.      Defendants own multiple Italian restaurants in Washington, DC that operate as a single enterprise. Plaintiffs worked for one or more of Defendants' restaurants for various lengths of time. Throughout Plaintiffs' employ, Defendants engaged in pay practices that denied Plaintiffs overtime and/or regular compensation for all of their hours.

2.      Shortly after the original Complaint was served on Defendant Ilhan, Defendants discharged Plaintiffs Alcides Ramirez ("Alcides") and Anael Ramirez ("Anael") as a retaliatory measure against all three Ramirez Plaintiffs (who are related).

3.      Plaintiffs bring this action to recover damages for Defendants' willful failure to pay them minimum and overtime wages, and for Defendants' retaliatory discharge, in violation of: the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the District of Columbia Minimum Wage Act Revision Act ("DCMWA"), D.C. Code, § 32-1001 *et seq.*; and the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq.*

**Jurisdiction and Venue**

4.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28

U.S.C. § 1367 (supplemental jurisdiction).

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this

district, and a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in

this district.

**Parties**

6.      Plaintiffs are adult residents of Washington, DC.

7.      Plaintiffs Adonay and Alcides are brothers.

8.      Plaintiff Anael is a cousin of Plaintiffs Adonay and Alcides.

9.      Defendant Eye Street Dining, Inc. ("Eye Street") is a District of Columbia corporation

with its principal place of business at 425 I Street NW, Washington, DC 20001. Eye Street's

resident agent is Hakan Ilhan, 4561 Indian Rock Terrace NW, Washington, DC 20007.

Defendant Eye Street does business under the trade name Alba Osteria.

10.      Defendant Foxhall Enterprises, Inc. ("Foxhall") is a District of Columbia corporation

with its principal place of business at 1331 L Street NW, Washington, DC 20005. Foxhall's

resident agent is Hakan Ilhan, 4561 Indian Rock Terrace NW, Washington, DC 20007.

Defendant Foxhall does business under the trade name Pizza Autentica.

11.      Defendant First Annex, Inc. ("First Annex") is a Virginia corporation licensed to do

business in the District of Columbia. Its principal place of business is 4735 Dexter Street NW,

Washington, DC 20007. Its resident agent is Hakan Ilhan, 4735 Dexter Street NW, Washington,

DC 20007. Defendant First Annex does business under the trade name Café Cantina.

12.     Defendant Golden Eagle, Inc. ("Golden Eagle") was a District of Columbia corporation that is now defunct. Its principal place of business was 4561 Indian Rock Terrace NW, Washington, DC 20007. Its resident agent is Hakan Ilhan, 4561 Indian Rock Terrace NW, Washington, DC 20007. Defendant Golden Eagle does business under the trade name Al Dente and Pizza Autentica

13.     Defendant Division Enterprises, Inc. ("Division Enterprises") is a Maryland corporation. Its principal place of business in the District of Columbia is 4561 Indian Rock Terrace NW, Washington, DC 20007. Its resident agent is Ilhan, 4561 Indian Rock Terrace NW, Washington, DC 20007. Defendant Division Enterprises does business under the trade name Gelateria Dolce Vita.

14.     Defendant Hakan Ilhan ("Ilhan") is an adult resident of the District of Columbia. Defendant Ilhan is owner of Eye Street, Foxhall, First Annex, Golden Eagle, and Division Enterprises, Inc. He exercises exclusive control over the Defendant corporations' operations, including their pay practices.

### Defendants' Business Enterprise

15.     Defendants own and operate the Italian restaurant known as "Alba Osteria," located at 425 I Street NW, Washington, DC 20001.

16.     Defendants own and operate the Italian restaurant known as "Al Dente," located at 3201 New Mexico Avenue NW, Washington, DC 20016.

17.     Defendants own and operate restaurants known as "Pizza Autentica," with locations at 1015 15th Street NW, Washington, DC 20016; 1331 L Street NW #1, Washington, DC 20001; 425 3rd Street SW, Washington, DC 20024; 300 7th Street SW, Washington, DC 20024; and 2121 K Street NW, Washington, DC 20005.

18.     Defendants own and operate restaurants known as "Café Cantina," with locations at 3050 K Street NW, Washington, DC 20007; and 1325 G Street NW, Washington DC 20005.

19.     Defendants operate Al Dente under a license issued by the District of Columbia to Golden Eagle.

20.     Golden Eagle was a District of Columbia corporation. Golden Eagle's corporate status has been revoked. Golden Eagle's corporate status has not been reinstated as of October 19, 2015.

21.     Defendants operate Gelateria Dolce Vita at 3050 K Street NW, Washington, DC 20007 under a license issued by the District of Columbia to Division Enterprises.

22.     The paychecks issued by Defendants to Plaintiffs all list the same address: 4561 Indian Rock Terrace NW, Washington, DC 20007.

23.     Defendant Ilhan owns 4561 Indian Rock Terrace NW, Washington, DC 20007.

24.     The paychecks issued by Defendants to Plaintiffs all list the same mobile phone number: 202-255-6549.

25.     202-255-6549 is a phone number registered to Defendant Ilhan.

26.     Defendant Ilhan is an owner and/or officer of all five corporate Defendants.

27.     Defendant Ilhan exclusively controls the operations of the five corporate Defendants, including the compensation of those corporations' employees.

28.     Under the direction of Defendant Ilhan, all the Defendants work in tandem as one business enterprise.

29.     Defendant Ilhan regularly assigns and re-assigns his employees to work in the different restaurants within his enterprise, according to his scheduling needs.

30.     For example, in December 2012, Defendant Ilhan reassigned Plaintiff Adonay from Al Dente to Alba Osteria.

31.     Defendant Ilhan required Plaintiffs Anael and Nataren to work in multiple restaurants within the enterprise, frequently within the same pay period.

### General Factual Allegations Concerning Plaintiff Adonay

32.     Plaintiff Adonay was hired by Defendants in approximately 2010.

33.     Plaintiff Adonay was employed as a kitchen hand. His primary tasks included food preparation and cleaning.

34.     At all relevant times, Plaintiff Adonay customarily worked Tuesday through Sunday, from 10:00 a.m. through 11:00 p.m.

35.     In 2012 and 2013, Plaintiff Adonay was employed in Defendants' Al Dente restaurant.

36.     For almost all of 2012, Defendants paid Plaintiff Adonay with personal checks.

37.     In 2012, Defendants paid Plaintiff Adonay approximately $10.00 for each and every hour that he worked, including overtime hours.

38.     Plaintiff Adonay worked approximately 71.25 hours each and every workweek from July 8, 2012 through December 22, 2012 (24 workweeks).

39.     Plaintiff Adonay worked a total of approximately 750 hours of overtime from July 8, 2012 through December 22, 2012.

40.     Defendants owe Plaintiff Adonay approximately $3,750.00 in overtime pay for the period of July 8, 2012 through December 22, 2012.

41.     On December 23, 2012, Defendants began to pay Plaintiff Adonay according to the District of Columbia's minimum wage and overtime provisions. On average, Plaintiff Adonay was paid for 71.25 hours for every week of 2013.

42.     For example, for the two-week pay period of March 31, 2013 through April 13, 2013, Plaintiff Adonay worked 152.5 hours and Defendants paid him $1,557.19:



| PERSONAL AND CHECK INFORMATION | EARNINGS | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|---|
| Adonai Ramirez | | Hourly | 80.00 | 8.2500 | 660.00 | 640.00 | 5280.00 |
| 3701 16th Street NW | | Overtime | 72.50 | 12.3750 | 897.19 | 521.75 | 6456.67 |
| Washington, DC  20010 | | EARNINGS | 152.50 | | 1557.19 | 1161.75 | 11736.67 |
| Soc Sec #: xxx-xx-xxxx   Employee ID: 97 | WITHHOLDINGS | DESCRIPTION | FILING STATUS | | THIS PERIOD ($) | | YTD ($) |
| Home Department: 5 Kitchen | | Social Security | | | 96.54 | | 727.67 |
| Pay Period: 03/31/13 to 04/13/13 | | Medicare | | | 22.58 | | 170.18 |
| Check Date: 04/22/13   Check #: 6588 | | Fed Income Tax | M 5 | | 48.80 | | 318.29 |
| NET PAY ALLOCATIONS | | DC Income Tax | S 5 | | 66.41 | | 488.05 |
| DESCRIPTION   THIS PERIOD ($)   YTD ($) | | TOTAL | | | 234.33 | | 1704.19 |
| Check Amount   1322.86   10032.48 | | | | | | | |
| NET PAY   1322.86   10032.48 | | | | | | | |

43.     On approximately December 23, 2013, Defendant Ilhan reassigned Plaintiff Adonay to Alba Osteria, where Plaintiff Adonay worked until approximately December 7, 2014.

44.     Plaintiff Adonay's hourly workload did not change between 2013 and 2014. Plaintiff Adonay consistently worked for Defendants an average of approximately 71.25 hours per week.

45.     However, starting on February 16, 2014, Defendants paid Plaintiff Adonay for only his first 103.85 hours of work per workweek:



| PERSONAL AND CHECK INFORMATION | EARNINGS | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|---|
| Adonai R Martines | | Hourly | 80.00 | 9.5000 | 760.00 | 400.00 | 3800.00 |
| 3701 16 st nw | | Overtime | 23.86 | 14.2500 | 340.01 | 163.46 | 2329.32 |
| Washington, DC  20010 | | EARNINGS | 103.86 | | 1100.01 | 563.46 | 6129.32 |
| Soc Sec #: xxx-xx-xxxx   Employee ID: 76 | WITHHOLDINGS | DESCRIPTION | FILING STATUS | | THIS PERIOD ($) | | YTD ($) |
| Home Department: 5 Kitchen | | Social Security | | | 68.20 | | 380.02 |
| Pay Period: 02/16/14 to 03/01/14 | | Medicare | | | 15.96 | | 88.88 |
| Check Date: 03/10/14   Check #: 100339 | | Fed Income Tax | S 6 | | 10.19 | | 121.66 |
| NET PAY ALLOCATIONS | | DC Income Tax | S 6 | | 35.12 | | 213.34 |
| DESCRIPTION   THIS PERIOD ($)   YTD ($) | | TOTAL | | | 129.47 | | 803.90 |
| Check Amount   970.54   5325.42 | | | | | | | |
| NET PAY   970.54   5325.42 | | | | | | | |

FOLD AND REMOVE
FOLD AND REMOVE

| PERSONAL AND CHECK INFORMATION | EARNINGS | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|---|
| Adonai R Martines | | Hourly | 80.00 | 9.5000 | 760.00 | 480.00 | 4560.00 |
| 3701 16 st nw | | Overtime | 23.85 | 14.2500 | 339.86 | 187.31 | 2669.18 |
| Washington, DC 20010 | | EARNINGS | 103.85 | | 1099.86 | 667.31 | 7229.18 |

| | WITHHOLDINGS | DESCRIPTION | FILING STATUS | THIS PERIOD ($) | YTD ($) |
|---|---|---|---|---|---|
| Soc Sec #: xxx-xx-xxxx   Employee ID: 76 | | Social Security | | 68.19 | 448.21 |
| Home Department: 5 Kitchen | | Medicare | | 15.94 | 104.82 |
| Pay Period: 03/02/14 to 03/15/14 | | Fed Income Tax | S 6 | 10.18 | 131.84 |
| Check Date: 03/24/14   Check #: 100402 | | DC Income Tax | S 6 | 35.11 | 248.45 |
| NET PAY ALLOCATIONS | | | | | |

| DESCRIPTION | THIS PERIOD ($) | YTD ($) | TOTAL | 129.42 | 933.32 |
|---|---|---|---|---|---|
| Check Amount | 970.44 | 6295.86 | | | |
| NET PAY | 970.44 | 6295.86 | | | |

46.     From approximately February 16, 2014 through approximately June 30, 2014,

Defendants failed to pay Plaintiff Adonay for at least 367 hours, all of which were overtime

hours.

47.     From approximately July 1, 2014 through approximately December 7, 2014, Defendants

failed to pay Plaintiff for at least 444 hours, all of which were overtime hours.

48.     For their failure to pay overtime from February 16, 2014 through approximately

December 7, 2014, Defendants owe Plaintiff Adonay approximately $10,781.76.

49.     In total, Defendants owe Plaintiff Adonay approximately **$14,531.76** in minimum and

overtime wages from July 8, 2012 through December 7, 2014.

### General Factual Allegations Concerning Plaintiff Alcides

50.     Plaintiff Alcides was hired on approximately December 26, 2013.

51.     Plaintiff Alcides was first assigned to work at Al Dente.

52.     On approximately January 15, 2014 Defendant Ilhan transferred Plaintiff Alcides from Al

Dente to Alba Osteria.

53.     Defendants employed Plaintiff Alcides as a kitchen hand. His primary tasks included

food preparation and cleaning.

54.     Plaintiff Alcides worked with Plaintiff Adonay at Alba Osteria.

55.     Plaintiff Alcides and Plaintiff Adonay worked nearly the same schedules.

56.     Plaintiff Alcides typically worked six days a week, from 10:00 a.m. to 11:00 p.m. On occasion, he worked half a day from 4:00 p.m. to 11:00 p.m.

57.     Plaintiff Alcides typically worked approximately 65 to 70 hours per week.

58.     Defendants typically allowed Plaintiff Alcides to take Thursday off during his employment at Alba Osteria.

59.     However, on at least four occasions, Defendants required Plaintiff Alcides to work at Al Dente on Thursday.

60.     After January 15, 2014, Plaintiff Alcides worked approximately 48 hours at Al Dente in addition to his work at Alba Osteria. All of these hours were overtime. Defendants failed to pay Plaintiff Alcides overtime for these 48 hours.

61.     Defendants owe Plaintiff Alcides approximately $228.00 in overtime wages.

62.     Moreover, Defendants failed to pay Plaintiff Alcides for all of his hours worked.

63.     For example, during the pay period of January 19, 2015 through February 1, 2015, Plaintiff Alcides worked approximately 134.21 hours. However, Defendants paid Plaintiff Alcides for only 121.71 hours, a difference of 12.5 hours.

64.     From approximately December 26, 2013 through approximately June 30, 2014, Defendants failed to pay Plaintiff anything for approximately 168.75 hours, all of which were overtime hours.

65.     From approximately July 1, 2014 through June 30, 2015, Defendants failed to pay Plaintiff Alcides anything for approximately 325 hours, all of which were overtime hours.

66.     From approximately July 1, 2015 through August 13, 2015, Defendants failed to pay Plaintiff Alcides anything for approximately 43.75 hours, all of which were overtime hours.

67.     During the course of Plaintiff Alcides' employment, Defendants failed to pay him anything for approximately 531.25 hours worked, all of which were overtime hours. For these unpaid hours, Defendants owe Plaintiff Alcides $7,331.25.

68.     In total, Defendants owe Plaintiff Alcides approximately **$7,559.25** in minimum and overtime wages from December 26, 2013 through August 13, 2015.

69.     On approximately August 13, 2015, Plaintiff Alcides' manager, "Naomi," called him and fired him, stating that he would no longer be on the schedule because of an unspecified problem.

70.     Defendants provided Plaintiff Alcides with no further explanation as to why he was fired.

71.     Plaintiff Alcides found new employment on approximately August 19, 2015.

72.     Since August 19, 2015, Plaintiff Alcides has earned only $520 a week.

### General Factual Allegations Concerning Plaintiff Anael

73.     Plaintiff Anael was hired on approximately December 26, 2013.

74.     Plaintiff Anael's first work assignment was at Al Dente.

75.     During the course of his employment, Plaintiff Anael was frequently asked to work at Al Dente, Alba Osteria, Pizza Autentica and Café Cantina.

76.     Defendants employed Plaintiff Anael as a kitchen hand. His primary tasks included food preparation and cleaning.

77.     Plaintiff Anael typically worked at more than one of Defendants' restaurant in a single pay period.

78.     Plaintiff Anael typically worked more than 40 hours a week for Defendants.

79.     Defendants paid overtime rates when Plaintiff Anael worked more than 40 hours at a single restaurant during one workweek.

80.     However, when Plaintiff Anael worked more than 40 hours in a workweek between two of Defendant Ilhan's restaurants, Defendants did not pay Plaintiff Anael overtime.

81.     For example, during the pay period of August 31, 2014 through September 13, 2014, Plaintiff Anael worked 70 hours at Café Cantina and 44.59 hours at Pizza Autentica (for a total of 114.59 hours). Defendants paid Plaintiff Anael the same hourly rate of $9.50 for each of the 114.59 hours:



82.     From December 26, 2013 through June 30, 2014 Defendants failed to pay Plaintiff Anael for approximately 150 overtime hours.

83.     From July 1, 2014 through June 30, 2015 Defendants failed to pay Plaintiff Anael for approximately 612 hours.

84.     In total, Defendants owe Plaintiff Anael approximately **$3,525.75** in unpaid overtime wages.

85.     On or about August 14, 2015 Defendants fired Plaintiff Anael.

86.     On approximately August 14, 2015 Plaintiff Anael was working at the Pizza Autentica located at 425 3rd Street SW, Washington, DC 20024. While he worked, a manager named "Nicha," called him on the restaurant's phone to tell him that there was no more work for him. When Plaintiff Anael asked why this was, "Nicha" responded that she did not know.

87.     Defendants provided Plaintiff Anael with no explanation for why he was fired.

88.     On or about August 19, 2015 Plaintiff Anael found employment with a Chinese restaurant. He currently earns approximately $380 per week.

### General Factual Allegations Concerning Plaintiff Nataren

89.     Defendants employed Plaintiff Olvin Alexander Nataren ("Nataren") from approximately October 15, 2012 through approximately June 15, 2013, and from approximately April 15, 2014 through approximately July 05, 2015.

90.     Plaintiff Nataren's first work assignment was at the Pizza Autentica located at 300 7th Street SW, Washington, DC 20024.

91.     During the course of his employment, Defendants frequently asked Plaintiff Nataren to work at Café Cantina and Gelateria Dolce Vita.

92.     Defendants employed Plaintiff Nataren as a kitchen hand. His primary tasks included food preparation and cleaning.

93.     Plaintiff Nataren typically worked at more than one restaurant in a single pay period.

94.     Plaintiff Nataren typically worked more than 40 hours a week for Defendants.

From October 15, 2012 through December 31, 2012, Plaintiff Nataren typically worked 50 hours a workweek.

95.     From approximately October 15, 2012 through approximately December 31, 2012, Defendants paid Plaintiff Nataren in cash.

96.     Starting on approximately January 1, 2013, Defendants paid Plaintiff Nataren with checks.

97.     Defendants paid Plaintiff Nataren approximately $9.00 per hour from approximately October 15, 2012 through approximately June 21, 2014; $9.50 per hour from approximately June 22, 2014 through approximately June 28, 2015; and $10.50 per hour from approximately June 29, 2015 through July 5, 2015.

98.     From October 15, 2012 through December 31, 2012, Defendants paid Plaintiff Nataren approximately $9.00 per hour for each and every hour worked, including overtime hours.

99.     Defendants did not pay Plaintiff Nataren overtime from October 15, 2012 through December 31, 2012.

100.    Starting on approximately January 1, 2013, Defendants began to pay overtime rates to Plaintiff Nataren when he worked more than 40 hours at one particular restaurant during one workweek.

101.    However, when Plaintiff Nataren worked more than 40 hours in a workweek between two of Defendant Ilhan's restaurants, Defendants did not pay Plaintiff Nataren overtime.

102.    For example, during the pay period of July 20, 2014 through August 2, 2014, Plaintiff Nataren worked 80 hours at Pizza Autentica and 25 hours at Café Cantina (for a total of 105 hours). Defendants paid Plaintiff Anael the same hourly rate of $9.50 for each of the 105 hours:

| FOLD AND REMOVE | | | | | | FOLD AND REMOVE | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **PERSONAL AND CHECK INFORMATION** | **EARNINGS** | **DESCRIPTION** | **HRS/UNITS** | **RATE** | **THIS PERIOD ($)** | **YTD HOURS** | **YTD ($)** |
| Olvin A Nataren | | | | | | | |
| 3348 Mount Pleasant St NW | | Regular | 80.00 | 9.5000 | 760.00 | 226.36 | 2129.97 |
| 4 | | EARNINGS | 80.00 | | 760.00 | 226.36 | 2129.97 |
| Washington, DC  20010 | **WITHHOLDINGS** | **DESCRIPTION** | **FILING STATUS** | | **THIS PERIOD ($)** | | **YTD ($)** |
| Soc Sec #: xxx-xx-xxxx   Employee ID: 79 | | Social Security | | | 47.12 | | 132.06 |
| Home Department: 206 7th Street | | Medicare | | | 11.02 | | 30.88 |
| | | Fed Income Tax | S 3 | | 21.77 | | 36.81 |
| Pay Period: 07/20/14 to 08/02/14 | | DC Income Tax | S 3 | | 26.31 | | 61.99 |
| Check Date: 08/11/14   Check #: 8291 | | | | | | | |
| **NET PAY ALLOCATIONS** | | **TOTAL** | | | 106.22 | | 261.74 |
| **DESCRIPTION**   **THIS PERIOD ($)**   **YTD ($)** | | | | | | | |
| Check Amount       653.78       1868.23 | | | | | | | |
| **NET PAY**            653.78       1868.23 | | | | | | | |

| FOLD AND REMOVE | | | | | | FOLD AND REMOVE | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **PERSONAL AND CHECK INFORMATION** | **EARNINGS** | **DESCRIPTION** | **HRS/UNITS** | **RATE** | **THIS PERIOD ($)** | **YTD HOURS** | **YTD ($)** |
| Olvin A Nataren | | | | | | | |
| 3348 Mount Pleasant St NW | | Regular | 25.00 | 9.5000 | 237.50 | 65.00 | 617.50 |
| #4 | | EARNINGS | 25.00 | | 237.50 | 65.00 | 617.50 |
| Washington, DC  20010 | **WITHHOLDINGS** | **DESCRIPTION** | **FILING STATUS** | | **THIS PERIOD ($)** | | **YTD ($)** |
| Soc Sec #: xxx-xx-xxxx   Employee ID: 239 | | Social Security | | | 14.73 | | 38.29 |
| Home Department: 204 Harbor | | Medicare | | | 3.44 | | 8.95 |
| | | DC Income Tax | S 3 | | 1.77 | | 2.78 |
| Pay Period: 07/20/14 to 08/02/14 | | | | | | | |
| Check Date: 08/11/14   Check #: 8362 | | **TOTAL** | | | 19.94 | | 50.02 |
| **NET PAY ALLOCATIONS** | | | | | | | |
| **DESCRIPTION**   **THIS PERIOD ($)**   **YTD ($)** | | | | | | | |
| Check Amount       217.56       567.48 | | | | | | | |
| **NET PAY**            217.56       567.48 | | | | | | | |

103.    From approximately October 15, 2012 through approximately June 21, 2014, Defendants

failed to pay Plaintiff Nataren for approximately 480 overtime hours.

104.    From approximately June 22, 2014 through approximately July 5, 2015, Defendants

failed to pay Plaintiff Nataren for approximately 519.76 hours.

105.    In total, Defendants owe Plaintiff Nataren approximately **$2,316.93** in unpaid overtime

wages.

## General Factual Allegations

106.    At all relevant times, the federal minimum wage was $7.25 per hour.

107.    From the beginning of Plaintiffs' employment until June 30, 2014, the District of

Columbia minimum wage was $8.25 per hour. From July 1, 2014 through June 30, 2015, the

District of Columbia minimum wage was $9.50 per hour.

108.    Defendants owe Plaintiffs approximately **$27,933.69** in minimum and overtime wages.

109.    At all relevant times, Defendants had more than two employees, and the annual gross

volume of Defendants' business exceeded $500,000.00.

110.    At all relevant times, Defendants did not maintain true and accurate records of each hour,

day, and week worked by Plaintiffs, or of how much Plaintiffs were paid for their work, as

required by 29 C.F.R. § 516 and D.C. Code § 32-1008. Accordingly, the exact amount of hours

worked by and wages owed to Plaintiffs will only be known through discovery.

111.    At all relevant times, Defendants had the power to fire Plaintiffs.

112.    At all relevant times, Defendants had the power to control Plaintiffs' work schedules.

113.    At all relevant times, Defendants had the power to set Plaintiffs' rate of pay.

114.    At all relevant times, Defendants were aware that they were legally required to pay

Plaintiffs the D.C. and federal minimum wage.

115.    At all relevant times, Defendants were aware that they were legally required to pay

Plaintiffs one and one-half times his regular rate for all hours worked in excess of 40 hours in

any one workweek.

116.    At all relevant times, Defendants were aware that they were legally required to timely

pay Plaintiffs all wages that Plaintiffs were legally due.

<u>**COUNT I**</u>
**FAILURE TO PAY MINIMUM AND OVERTIME WAGES UNDER THE FLSA**

117.    Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

118.    Defendants were "employers" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. §
203(d).

119.    The FLSA requires that employers pay non-exempt employees a minimum wage equal to
an amount set by Congress. 29 U.S.C. § 206(a)(1).

120.    The FLSA requires employers to pay non-exempt employees one and one-half times their
regular hourly rate for hours worked in excess of 40 hours in any one workweek. 29 U.S.C. §
207(a)(1).

121.    Defendants violated the FLSA by knowingly failing to pay the required minimum wage
to Plaintiffs.

122.    Defendants violated the FLSA by knowingly failing to pay Plaintiffs at least one and one-
half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek.

123.    Defendants' violations of the FLSA were willful.

124.    For their violations of the FLSA, Defendants are liable to Plaintiffs for unpaid minimum
wage and overtime compensation, an equal amount as liquidated damages, court costs,
reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the
Court.

## <u>COUNT II</u>
### FAILURE TO PAY MINIMUM AND OVERTIME WAGES UNDER THE DCMWA

125.    Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

126.    Defendants were employers of Plaintiffs within the meaning of the DCMWA, D.C. Code
§ 32-1002(3).

127.    Before July 1, 2014, the DCMWA required that employers pay non-exempt employees
the federal minimum wage pursuant to the FLSA, plus $1.00. D.C. Code § 32-1003(a).

128.    From July 1, 2014 until June 30, 2015, the DCMWA required that employers pay non-exempt employees at least $9.50 per hour. D.C. Code § 32-1003(a).

129.    Since July 1, 2015, the DCMWA requires that employers pay non-exempt employees at least $10.50 per hour. D.C. Code § 32-1003(a)

130.    The DCMWA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek. D.C. Code § 32-1003(c).

131.    Defendants violated the DCMWA by knowingly failing to pay the required minimum wage to Plaintiffs.

132.    Defendants violated the DCMWA by knowingly failing to pay Plaintiffs one and one-half times the required minimum wage for hours worked in excess of 40 hours in any one workweek.

133.    Defendants' violations of the DCMWA were willful.

134.    For their violations of the DCMWA, Defendants are liable to Plaintiffs for unpaid minimum wage and overtime compensation, plus three times the amount of unpaid wages earned as liquidated damages, plus court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

<u>COUNT III</u>
**FAILURE TO PAY WAGES UNDER THE DCWPCL**

135.    Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

136.    Defendants were employers of Plaintiffs within the meaning of the DCWPCL, D.C. Code § 32-1301(1).

137.    The DCWPCL requires employers to pay an employee who quits or resigns all wages due upon the next regular payday, or within 7 days from the date of quitting or resigning, whichever is earlier. D.C. Code § 32-1303(2).

17

138.    For purposes of the DCWPCL, "wages" includes, among other things, minimum and overtime wages. D.C Code § 32-1301(3).

139.    Defendants violated the DCWPCL by knowingly failing to pay Plaintiffs all wages earned, including minimum and overtime wages.

140.    Defendants' violations of the DCWPCL were willful.

141.    For their violations of the DCWPCL, Defendants are liable to Plaintiffs for unpaid wages, plus three times the amount of unpaid wages as liquidated damages, plus court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

## COUNT IV
## RETALIATION IN VIOLATION OF THE FLSA

142.    Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

143.    Plaintiff Adonay filed this action on July 8, 2015.

144.    Defendant Ilhan was served on July 16, 2015.

145.    Prior to July 16, 2015, Defendants had never reprimanded or disciplined Plaintiffs Alcides and Anael for any infraction associated with their employment.

146.    Defendants fired Plaintiff Alcides on approximately August 13, 2015. Defendants fired Plaintiff Anael on approximately August 14, 2015.

147.    The FLSA forbids an employer to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding…" 29 U.S.C. § 215(a)(3).

148.    Defendants knew that Plaintiffs Alcides and Anael were related to Plaintiff Adonay.

149.    Plaintiff Adonay personally introduced Plaintiffs Alcides and Anael to Defendants as potential employees in their restaurants.

150.    Defendant Ilhan called Plaintiff Adonay and Anael by the same nickname, "Panchito."

151.    Defendants fired Plaintiff Alcides and Anael so in retaliation against Plaintiff Adonay for having filed a complaint under the FLSA.

152.    Defendants "discriminated against" Plaintiff Adonay by refusing to maintain the employment of his immediate family within the meaning of 29 U.S.C. § 215(a)(3).

153.    Defendants "discriminated against" Plaintiffs Alcides and Anael because Plaintiff Adonay filed a lawsuit against Defendants alleging FLSA violations within the meaning of 29 U.S.C. § 215(a)(3).

154.    Defendants knew that it was unlawful to fire Plaintiffs Alcides and Anael because Plaintiff Adonay filed this action.

155.    Defendants acted with reckless indifference to the fact that retaliating against Plaintiffs Alcides and Anael was unlawful.

156.    For their knowing and willful violations of the FLSA's anti-retaliation provisions, Defendants are liable to Plaintiffs for lost wages, an equal amount as liquidated damages, punitive damages, court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

## COUNT V
## RETALIATION IN VIOLATION OF THE DCWPCL

157.    Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

158.    The DCWPCL prohibits an employer to "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee or person because….the person initiated" "a proceeding" under the DCWPCL. See D.C. Code § 32-1310(3).

159.    Plaintiff Adonay initiated a proceeding within the meaning of the DCMWA by filing this action on July 8, 2015.

160.    By firing his family members, Defendants "discriminated," "penalized" and "retaliated against" Plaintiff Adonay within the meaning of D.C. Code § 32-1311(a).

161.    By firing Plaintiffs Alcides and Anael, Defendants "discriminated," "penalized," and "retaliated against" them within the meaning of D.C. Code § 32-1310(3).

162.    Defendants fired Plaintiff Alcides and Anael in retaliation for Plaintiff Adonay's federal lawsuit seeking damages under the DCWPCL.

163.    When Defendants fired Plaintiffs Alcides and Anael, Defendants acted with actual malice or with reckless indifference to the fact that firing Plaintiffs was unlawful.

164.    For their knowing and willful violations of the DCWPCL's anti-retaliation provisions, Defendants are liable to Plaintiffs for front pay, lost compensation, liquidated damages, punitive damages, court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court, pursuant to D.C. Code § 32-1311(c).

<u>COUNT VI</u>
**RETALIATION IN VIOATION OF THE DCMWA**

165.    Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

166.    The DCMWA prohibits an employer to "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee or person because….the person caused to be instituted" a proceeding under the DCMWA. <u>See</u> D.C. Code § 32-1310(3).

167.    Plaintiff Adonay "instituted" a proceeding within the meaning of the DCMWA by filing this action on July 8, 2015.

168.    By firing Plaintiffs Alcides and Anael, Defendants "discriminat[ed] against" Plaintiff Adonay within the meaning of D.C. Code § 32-1310(3).

169.    By firing them, Defendants "discriminat[ed] against" Plaintiff Alcides and Anael within the meaning of D.C. Code § 32-1310(3).

170.    Defendants fired Plaintiff Alcides and Anael in retaliation for Plaintiff Adonay's federal lawsuit seeking damages under the DCMWA.

171.    Defendants acted with actual malice when they fired Plaintiffs Alcides and Anael.

172.    Defendants acted with reckless indifference to the fact that retaliating against Plaintiffs was unlawful.

173.    For their knowing and willful violations of the DCMWA's anti-retaliation provisions, Defendants are liable to Plaintiffs for front pay, lost compensation, liquidated damages, punitive damages, court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

**COUNT VII**
**WRONGFUL DISCHARGE**

174.    Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

175.    Defendants fired Plaintiff Alcides on approximately August 13, 2015. Defendants fired Plaintiff Anael on approximately August 14, 2015.

176.    Defendants fired Plaintiff Alcides and Plaintiff Anael because Plaintiff Adonay filed this action on July 8, 2014 alleging that Defendants failed to pay minimum and overtime wages.

177.    The District of Columbia has a clear and undeniable public policy to protect both the employee's right to earn the mandated minimum and overtime wages and the employee's right to seek enforcement of the minimum wage and overtime laws. See D.C. Code § 32-1301, *et. al.,* and see D.C. Code § 32-1001, *et. al*.

178.    Defendants' fired Plaintiffs Alcides and Anael in retaliation for Plaintiff Adonay's federal lawsuit seeking redress for Defendants alleged failure to pay minimum and overtime wages.

179.     Defendants acted with actual malice when they fired Plaintiffs Alcides and Anael or with reckless indifference to the fact that doing so was unlawful.

180.     Plaintiffs Alcides and Anael have incurred damages as a result of the discharge.

181.     Plaintiff Alcides was unemployed for six days. Plaintiff Alcides' new employment pays him $520 per week.

182.     Plaintiff Anael was unemployed for four days. Plaintiff Anael's new employment pays him a weekly salary of $380.

183.     For their knowing, willful and malicious wrongful discharge of Plaintiffs Alcides and Anael, Defendants are liable to Plaintiffs for front and back pay and also for punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against the Defendants, jointly and severally, on all counts, for **$251,734.76**, and grant the following relief:

a.      Award Plaintiffs $111,734.76, consisting of the following overlapping elements:

i.      unpaid minimum and overtime wages, plus an equal amount as liquidated damages, pursuant to the FLSA, 29 U.S.C. § 216;

ii.      unpaid minimum and overtime wages, plus three times the amount of unpaid minimum and overtime wages earned as liquidated damages, pursuant to the DCMWA, D.C. Code § 32-1012;

iii.      unpaid wages, plus three times the amount of unpaid wages earned as liquidated damages, pursuant to the DCWPCL, D.C. Code § 32-1303(4) and 32-1308;

b.      Award Plaintiffs prejudgment and postjudgment interest as permitted by law.

c.      Award Plaintiffs reasonable attorneys' fees and expenses incurred in the

prosecution of this action;

d.      Award Plaintiffs estimated back pay and front pay of $10,000.00;

e.      Award Plaintiffs $30,000.00 in liquidated damages for retaliation ($10,000 x 3),

pursuant to the DCWPCL, D.C. Code § 32-1311(c);

f.      Award Plaintiffs punitive damages of $100,000.00;

g.      Award Plaintiffs court costs; and

h.      Award any additional relief the Court deems just.


Date: 10/19/2015                         Respectfully submitted,

                                         /s/ Justin Zelikovitz, Esq.
                                         Justin Zelikovitz, #986001
                                         LAW OFFICE OF JUSTIN ZELIKOVITZ, PLLC
                                         519 H Street NW;
                                         Washington, DC 20001
                                         Phone: (202) 803-6083
                                         Fax: (202) 683-6102
                                         justin@dcwagelaw.com
                                         *Counsel for Plaintiffs*